UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SEATTLE HOUSE, LLC,**

    **Plaintiff,**

  v.

**CITY OF DELAWARE, OHIO,**

    **Defendant.**

Case No. 2:20-cv-3284
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION & ORDER

This matter is before the Court on Defendant City of Delaware's ("City") Motion for Judgment on the Pleadings. (ECF No. 12). Plaintiff Seattle House, LLC ("Seattle House") has responded, (ECF No. 19), to which the City has replied. (ECF No. 23). Also before the Court is non-party Second Ward Community Initiative's Motion for Leave to File Instanter Amicus Curiae Brief. (ECF No. 32). To which the City has responded in opposition, (ECF No. 34), and to which the non-party has replied. (ECF No. 35). For the reasons that follow, the City's Motion for Judgement on the Pleadings, (ECF No. 12), is **GRANTED IN PART** and **DENIED IN PART**. Additionally, Second Ward's Motion for Leave to File Instanter Amicus Curiae Brief, (ECF No. 32), is **DENIED**.

## I.

In 2019, Seattle House LLC developed an apartment complex consisting of 240 residential apartments and a clubhouse. (Compl. at ¶¶ 63, 64, ECF No. 1). In order to obtain permits to tap into the City's water and sewage lines, Seattle House paid the City of Delaware $1,917,883.00 in "capacity fees." (*Id.* at ¶¶ 1, 65, 68). Seattle House alleges that the City "overcharged [Seattle House] by well more than $1.2 million." (*Id.* at ¶ 66).

According to Seattle House, "the City purports to charge fees to defray the cost of each new development's use of the City's water and sewer system" but actually charges an "arbitrary amount." (*Id.* at ¶ 1). The City charges the fees based on estimations of average water and sewage use from 2006. (*Id.* at ¶¶ 30–37, 39). Without getting into the finer details, the City hired a firm to evaluate the city's water and sewage capacity fee structure, and the firm allegedly overestimated the average water and sewage use of single-family homes. (*Id.* at ¶ 33). Allegedly, the City has known that the firm's estimations are inaccurate since 2008 but has not corrected its fees. (*Id.* at ¶¶ 3, 40–44, ECF No. 1).

Currently, the fees amount to $11,035.00 for a single-family home. (*Id.* at ¶ 7).[1] The City charges fees to residential landowners based on the alleged overestimates, without making individualized corrections. (*See id.* at ¶¶ 3, 36–37, 66–67). In comparison, after twelve months the City reviews its estimates for non-residential properties to determine whether the estimates were accurate, and it will refund the owner for overestimations. (*Id.* at ¶¶ 36–37).

Seattle House alleges that the water and sewage capacity fees "add significant expense to affordable housing projects that, by necessity, have very tight budgets." (*Id.* at ¶ 7) Allegedly, these capacity fees make it "economically infeasible to build affordable housing." (*Id.*) This has allegedly resulted in an "affordable housing crisis." (*Id.* at ¶ 55). And there is allegedly a real need for affordable housing in the City. (*Id.* at ¶ 58). According to Seattle House, a household is cost overburdened if it is paying more than "30%" of its household income to housing. (*Id.*) In Delaware County (including the City) "22.3% of owners and 40.3% of renters are cost overburdened." (*Id.*) The City allegedly knew of the effect its fees would have on affordable housing. (*Id.* at ¶ 2). In

---

[1] Using a calculation, the fees are lessened for one, two, and three-bedroom apartments. (*See* Compl. at ¶¶ 36–37).

2002 when the City first began increasing its fees, the Building Industry Association of Central Ohio warned the City of the fees' effect on housing affordability. (*Id.* at ¶¶ 27–28).

Allegedly, the "lack of affordable housing has disproportionately impacted racial minorities whose incomes are less than their white counterparts." (*Id.* at ¶¶ 7, 59–61). The result, according to Seattle House, is that Delaware has remained a "nearly all-white city." (*Id.* at ¶ 8). Seattle House avers that the City's fees "cost Seattle House and others similarly situated millions of dollars while exacerbating the City's affordable housing crisis to the detriment of racial minorities." (*Id.* at ¶ 10).

Seattle House made a written demand to the City's law director in May 2020, then filed suit in this Court on June 29, 2020. (*Id.* at ¶ 69, ECF No. 1). Seattle House brings six counts against the City. In Count I, Seattle House alleges the City violated the Fair Housing Act of 1968. (*Id.* at 15). Seattle House brings Count II and III under 42 U.S.C. § 1983, alleging violations of the Equal Protection Clause and Substantive Due Process. (*Id.* at 16, 17). Seattle House brings the remaining Counts under Ohio law, alleging unjust enrichment, the violation of Article XVIII § 4 of the Ohio Constitution, and the violation of City code. (*Id.* at 18–20).

## II.

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Generally, the standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgement under Rule 56." Fed. R. Civ. P. 12(d). In this case,

the City's 12(c) motion is properly analyzed under the same standard as Rule 12(b)(6), despite Seattle House's contention that the City's motion should be treated as a motion for summary judgement. To the extent that matters outside of the pleadings have been presented to this Court, the Court has excluded those matters from its consideration of the Rule 12(c) motion.

To state a claim upon which relief may be granted under Rule 12(c) and 12(b)(6), Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79.

In *Twombly*, the Supreme Court concluded that, to meet the Rule 8 standard, a complaint must "nudge [] [a plaintiff's] claims across the line from conceivable to plausible." 550 U.S. at 570. The Court held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [entitlement] to relief [pursuant to Rule 8(a)(2)] requires more than labels and conclusions, and a

4

formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations and quotations omitted). "[N]aked assertion[s] . . . without some further factual enhancement [] stop[] short of the line between possibility and plausibility of entitle[ment] to relief." *Id.* at 557 (internal quotations omitted).

In *Iqbal*, the Court explained that one of the "principles" underlying *Twombly* is that the ordinary rule that courts must accept as true allegations made in pleadings for purposes of deciding a Rule 12(b)(6) motion does not apply to legal conclusions. *Id*. at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

A motion for judgment on the pleadings may be granted only if the moving party is clearly entitled to judgment. *Source Assocs. v. Valero Energy Corp*., 273 F. App'x. 425, 427 (6th Cir. 2008).

## III.

### A. Fair Housing Act

In Count I, Seattle House alleges that the City's water and sewage fees have created an affordable housing crisis that disparately impacts racial minorities, in violation of the Fair Housing Act of 1968 ("FHA"). (Compl. at ¶¶ 71–76, ECF No. 1; Pl. Resp. at 10, 13, ECF No. 19). The City argues that Seattle House's FHA claim should be dismissed for two reasons. First, the City argues that Seattle House does not have standing to assert this FHA claim for lack of an injury in fact. (Def. Mot. at 6, ECF No. 12). Second, the City asserts that disparate impact claims under the FHA are subject to a heightened pleading requirement for causation and argues that Seattle House has not satisfied that burden. (*See id.* at 9–10).

5

1. **Standing**

The City contends that Seattle House has not suffered an injury in fact and thus does not have standing. (*Id.* at 6). Seattle House responds that it has suffered financial injury through its payment of the City's "discriminatory" fees. (Pl. Resp. at 10, 12, ECF No. 19).

The FHA authorizes an "aggrieved person" to bring a civil action for an alleged discriminatory housing practice. 42 U.S.C. § 3613(a). The statute defines an "aggrieved person" to include "any person who– (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).

The Supreme Court has long recognized that standing to sue under the FHA extends as broadly as Article III of the U.S. Constitution permits. *E.g.*, *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972). To demonstrate standing under Article III, "a plaintiff must show an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Bank of America Corp. v. City. Of Miami, Fla.*, 581 U.S. ___, 137 S. Ct. 1296, 1302 (2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S.Ct. 1540, 1547 (2016)).

Seattle House's alleged injury is sufficient to constitute an injury in fact for purposes of conferring standing. To be sure, Seattle House does not allege that it was "denied housing," "deprived of services," or "the subject of discrimination." (*See* Pl. Resp. at 11, ECF No. 19) (quoting Def. Mot. at 6–9, ECF No. 12). Instead Seattle House alleges that the City is charging exorbitant fees for water and sewage connections, and that these fees have a disparate impact on racial minorities by causing an affordable housing crisis. Seattle House alleges that it too had to pay these fees and argues that its payment of these fees amounts to a financial injury.

The Supreme Court has recognized that financial injuries can confer standing in FHA cases. *See, e.g.*, *Bank of Am. Corp.*, 137 S. Ct. at 1303 (concluding that "lost tax revenue and extra municipal expenses" is a financial injury affording standing). "[A]s long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n.9 (1979). Seattle House has been financially injured by the City's allegedly "exorbitant" water and sewage connection fees. And, it is the City's policy of charging these "exorbitant" fees that Seattle House alleges is causing an affordable housing crisis. Though one might characterize Seattle House's payment of these fees as collateral damage, it still amounts to a direct financial injury.

The City characterizes Seattle House's injury as "buyer's remorse" and argues that the fees are not cognizable financial injuries because they were already paid. (Def. Reply at 5–6, ECF No. 23). In support, the City points out that often the financial injury is coupled directly with a denial of housing. *E.g.*, *In re Malone*, 592 F.Supp. 1135, 1155 (E.D. Mo. 1984) (finding an injury to plaintiff-developers where defendant-city's refusal to zone property as multi-family resulted in plaintiffs losing substantial sums of money invested in a proposed apartment community). However, the City points to no authority for its proposition that allegedly exorbitant fees do not cause financial injury. Whether Seattle House was itself economically precluded from building apartments is not the determinative question for purposes of standing. Seattle House claims that the City's "exorbitant" connection fees are a discriminatory housing practice, in that they disparately impact racial minorities by effectively precluding the development of affordable housing. Seattle House, as a payee of these fees, is an aggrieved person injured thereby.

Seattle House has alleged a financial "injury in fact" that is "fairly traceable" to the City's water and sewage connection fee policy and which is "likely to be redressed by a favorable judicial

7

decision." *Bank of America Corp.*, 137 S. Ct. at 1302. Accordingly, Seattle House has standing to bring its FHA claim.

### 2. Sufficiency of the Complaint

The City next contends that Seattle House has not sufficiently pleaded a disparate impact claim. (Def. Mot. at 9, ECF No. 12). According to the City, a plaintiff must make a "robust causality" showing at the pleading stage in order to bring a disparate impact claim under the FHA and Seattle House "fails to satisfy" this "heightened burden[.]" (*Id.* at 9, 11). The City submits that Seattle House has not "point[ed] to any policy or custom of the City" causing the alleged "affordable housing shortage" under *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015) ("*ICP*"). (Def. Mot. at 10–12, ECF No. 12). The Court disagrees.

In *ICP*, the Supreme Court held that "Disparate-impact claims are cognizable under the Fair Housing Act." *ICP*, 576 U.S. at 545. Thus, the FHA prohibits "unlawful practices including zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification." *Id.* As the parties agree, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* at 542. At the pleading stage, a plaintiff must "allege facts" or "produce statistical information" demonstrating a "casual connection." *Id.* at 543.

Through its well pleaded complaint, Seattle House has alleged facts that, if true, establish that a City policy (the fees) creates a barrier to affordable housing and disproportionately impacts racial minorities. Seattle House alleges that as early as 2002, the City learned that its new water and sewer capacity fee structure would drastically impact affordable housing within the City, but the City ignored those warnings. (Compl. at ¶¶ 26-29, ECF No. 1). Instead, the City allegedly

imposed and continues to assess the fees in "completely arbitrary amounts . . . that have nothing to do with the actual cost of capacity a new development adds to a system." (*Id.* at ¶ 1). Allegedly, the "exorbitant" fees make it "economically infeasible" to build affordable housing. (*Id.* at ¶ 7). And allegedly, the lack of affordable housing has disproportionately impacted racial minorities whose incomes are less than their white counterparts, leaving Delaware a nearly all white City. (*Id.* at ¶¶ 7-8). Seattle House has sufficiently alleged that the city's water and sewage capacity fees cause an affordable housing crisis that disparately impacts racial minorities. At this stage in the proceeds, Seattle House need not prove its case.

The City's contention that *ICP* requires a "heightened burden on the pleadings" for a disparate impact claim misinterprets *ICP*. (Def. Mot. at 11, ECF No. 12). In *ICP*, when discussing the "robust causality requirement[,]" the Supreme Court was referring to the need for "adequate safeguards at the *prima facie stage*[.]" *ICP* at 542 (emphasis added). The Southern District of New York explained it well:

> *ICP* emphasized that statistics demonstrating a racial disparity in a particular location, without an adequate showing of a causal connection to the challenged policy, would not be sufficient to establish a *prima facie* case of disparate impact. But a *prima facie* case is an evidentiary standard, and not a pleading requirement. *ICP* did not alter the plausibility standard for pleading, which requires only the plaintiff plead allegations that plausibly give rise to an inference that the challenged policy causes a disparate impact. Nor does *ICP* require Plaintiffs to proffer statistical evidence of disparate impact, if other facts are pleaded that support the inference.

*Winfield v. City of N.Y.*, 2016 U.S. Dist. LEXIS 146919, at *20 (S.D.N.Y. Oct. 24, 2016) (internal citations omitted) (denying a motion to dismiss an FHA claim for failure to establish a prima facie case because the plaintiffs alleged the defendant's policy had the effect of perpetuating racial residential segregation); *see also Cty. of Cook v. HSBC N. Am. Holdings*, Inc., 314 F. Supp. 3d

9

950, 967 (N.D. Ill. 2018) ("the requirement to establish a prima facie case [under *ICP*] applies only at the summary judgment stage").

The City cites *Ohio Democratic Party v. Husted*, 834 F.3d 620, 638 (6th Cir. 2016) to support its argument that "an alleged statistical disparity is not a sufficient basis for a disparate impact claim[,]" but that case did not concern the pleadings stage. (Def. Mot. at 10, ECF No. 12). The Sixth Circuit considered the disparate impact claim in *Ohio Democratic Party v. Husted*, in an appeal following a 10-day bench trial. 834 F.3d at 623. Whatever precedential value that case may have down the line this Court will not venture to say, but at this stage in the proceedings the City's reliance on that case is misplaced.

Seattle House alleges that the "exorbitant" fees are causing an affordable housing crisis that is disproportionately impacting racial minorities. At this stage in the proceedings, the Court accepts those allegations as true. Those allegations, accepted as true, are sufficient for Seattle House's FHA claim to survive the City's motion.

### B. Equal Protection Clause

In Count II, Seattle House alleges that the City violated the Equal Protection Clause of the Fourteenth Amendment by "differentiat[ing] between residential and non-residential properties" in the calculation and imposition of fees. (Compl. at ¶ 79, ECF No. 1). According to Seattle House, the City "has no rational basis" for the "discriminatory treatment of residential properties." (*Id.*) Seattle House challenges the City ordinances that apparently allow for the review of the water and sewage consumption of non-residential properties, and for potential fee refunds where consumption was overestimated, but that do not do the same for residential properties. (*Id.* at ¶¶ 36–37).

The City moves for judgement on the pleadings on Seattle House's claim of an Equal Protection Clause violation based on a twofold argument. First, the City argues that Seattle House has not pleaded disparate treatment because residential and non-residential landowners are not similarly situated. (Def. Mot. at 13–14, ECF No. 12). Second, the City argues that even assuming otherwise, Seattle House's claim does survive rational basis review. (*Id.* at 15). This Court need not decide whether residential and non-residential landowners are similarly situated because assuming that they are, the City's conduct nonetheless survives rational basis review.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005) (citation omitted). Through its Equal Protection claim, Seattle House does not allege that the City discriminately deprives individuals of fundamental rights or targets a suspect class. Instead, Seattle House's claim falls into the third category. (Pl. Resp. at 18, ECF No. 19).

To survive rational basis review, an ordinance need only be "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). "[T]he burden is on the one attacking the [classification] to negate every conceivable basis that might support it." *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (citation omitted). The government, moreover, "has no obligation to produce evidence to sustain the rationality of the statutory classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993). "This standard is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Parrino v. Price*, 869 F.3d 392, 398 (6th Cir. 2017).

This Court finds that the City has a rational basis for treating residential and non-residential landowners differently when calculating and imposing fees. Courts have recognized that "administrative considerations" can be legitimate government interests. *See, e.g.*, *Armour*, 566 U.S. at 682. Here, the City's decision to allow individualized re-examination of water and sewage use estimates for non-residential properties could be considered a rational administrative decision. The City could rationally conclude that non-residential (i.e. commercial and industrial) property is subject to a greater degree of individualized variation in water and sewage usage, and that this greater variation is reason for an individualized inquiry. In comparison, the City might reason that residential properties do not vary as considerably in their water and sewage use, and that therefore an individualized inquiry would be administratively inefficient. Alternatively, the City might have concluded that an individualized inquiry and the possibility of refunds would attract business. Though these are not the only rational bases for the dissimilar treatment, and they may not be the City's actual reason, they are enough to satisfy rational basis review.

In short, the City has a rational basis for treating residential landowners differently than non-residential landowners when determining water and sewage fees. Accepting as true the facts alleged in Seattle House's Complaint, as a matter of law the City is entitled to the dismissal of Seattle House's claim that the City violated the Equal Protection Clause.

C. **Substantive Due Process**

Seattle House also claims that the City's fees are "arbitrary, capricious, and irrational," in violation of "Substantive Due Process." (Compl. at ¶¶ 82, 88, ECF No. 1). The City argues that it is entitled to judgement on Seattle House's Substantive Due Process claim because Seattle House has not pleaded a violation of a fundamental right. (Pl. Mot. at 17). Seattle House re-articulates its claim in its response: The City's "arbitrary and capricious" fees deprive landowners of the "right to fair and reasonable fees under Ohio law," violating due process. (Pl. Resp. at 19, ECF No. 19).

Seattle House brings this claim as a 42 U.S.C. § 1983 cause of action. Section 1983 protects persons from the deprivation, under color of law, of "any rights, privileges, or immunities secured by the Constitution and laws . . . ." It being a federal statute, it is referring to the U.S. Constitution. *See Charles v. Baesler*, 910 F.2d 1349, 1352 (6th Cir. 1990).

There are fundamental rights, federal rights, state rights, statutory rights, *et cetera*. Some rights fall into several categories, but that is not always the case. Here, for example, assuming there is a "right to fair and reasonable fees under Ohio law," it does not follow that there is a corresponding fundamental right. And, in order to invoke Substantive Due Process under the U.S. Constitution, Seattle House must allege the violation of a fundamental right. *Charles*, 910 F.2d at 1353. Fundamental rights, in turn, are rights "deeply rooted in this Nation's history and tradition," or "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed[.]'" *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quotations omitted).

Seattle House's asserted right is not a fundamental one. It is neither deeply rooted in our history and tradition nor implicit in the concept of ordered liberty for federal courts to second guess the reasonableness of run-of-the-mill municipal water and sewer fees. Seattle House has not

13

alleged the violation of a right recognized under the Constitution of the United States, and the City is entitled to the dismissal of Count III.

V.

As a final matter, non-party Second Ward Community Initiative ("Second Ward") moves for leave to file an *Amicus Curiae* brief in support of Seattle House's response to the City's motion for judgement on the pleadings. (ECF No. 32). The City opposes Second Ward's motion, arguing that it should not be considered because it was filed over five months after briefing was completed, it would effectively serve as the functional equivalent of a sur-reply, and it includes documents beyond the scope of the scope of the 12(c) motion. (Def. Resp. at 2, 4–5, ECF No. 34). The Court agrees.

Leave to participate as *amicus curiae* is a privilege within the "sound discretion of the courts." *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). In evaluating whether participation is appropriate, courts consider whether "the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice." *Id.* Here, Second Ward did not move for leave to file until after the briefing was complete, and it included attachments more appropriate for summary judgement. In addition, Second Ward's memorandum in support suggests that it is interested primarily in discussing the issue of affordable housing, which is part of Seattle House's FHA claim. As discussed above, that claim survives the City's motion on its own. As such, this Court declines to grant Second Ward's motion at this juncture. If additional motions are later filed and Second Ward wishes to participate as an amicus at that time, Second Ward should not read this Opinion to bar its participation.

**IV.**

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** the City of Delaware's Motion for Judgment on the Pleadings (ECF No. 12). The City's motion is **GRANTED** with respect to Counts II and III, and **DENIED** with respect to Count I. Additionally, the Court **DENIES** Second Ward's Motion for Leave to File. (ECF No. 32).

    **IT IS SO ORDERED.**

8/2/2021                                                     s/Edmund A. Sargus, Jr.
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                            **UNITED STATES DISTRICT JUDGE**